BUXTON *v.* AINSWORTH.

1. EVIDENCE—OPINIONS—CONDITION OF HIGHWAY — IRRESPONSIVE ANSWER.

In an action for damages resulting from an injury suffered in a collision between vehicles on a highway, a witness who had been called to the place of the collision by plaintiff and had the place pointed out to him was asked in effect whether there was room for defendant to pass. *Held,* that if the question was objectionable as calling for witness' opinion on a question of fact, the answer was not so, where he stated that there was no object that would keep the vehicle from passing, that it was not a good road (a conclusion in defendant's favor), and that if the location of plaintiff's buggy was as pointed out to him, there would have been ample room, namely, nine feet of good road.

2. DAMAGES — PERSONAL INJURIES — EVIDENCE — ADMISSIBILITY— MEDICAL ATTENTION.

In an action for damages resulting from personal injuries, it may be shown by the attending physician that he advised complete rest, that medication was not required, and that

frequent visits would not be necessary, as explaining why, the injury being serious, the calls of the physician were infrequent.

3. SAME—PLAINTIFF'S INDUSTRY.

In an action for personal injuries, plaintiff's habits of industry may be shown.

4. WITNESSES—CROSS-EXAMINATION—SHOWING BIAS.

In an action for damages for a personal injury, defendant's father, who was a witness for defendant, was properly asked, on cross-examination, as showing his interest in the litigation, whether he did not claim to own everything defendant had, whether he knew anything about defendant having deeded all his land to him, and whether, although he had replevined all the personal property in the possession of defendant and levied upon under the execution for costs in the original case, he had given such property in for taxation.

5. EVIDENCE—PAROL EVIDENCE — CONVEYANCE OF LAND — HARMLESS ERROR.

A question to defendant's father whether he knew anything about defendant deeding his land to witness just before judgment was rendered at a previous trial of the case, if objectionable as an attempt to show by parol a conveyance of land, is harmless, where the witness had just stated that he claimed to own everything defendant had.

6. HIGHWAYS—COLLISION OF VEHICLES — ACTION — INSTRUCTIONS.

In an action for damages resulting from an injury suffered in a collision between vehicles on a highway, an instruction that might be open to the criticism that it failed to put upon plaintiff the duty of maintaining any outlook to discover approaching vehicles is not inappropriate where it appears that plaintiff saw defendant coming when some distance away and the jury could not have misapprehended plaintiff's theory in that regard.

7. TRIAL—INSTRUCTIONS—REFUSAL—PROPRIETY.

No error appears from the refusal of instructions which, so far as competent, are covered by the general charge.

8. HIGHWAYS—LAW OF THE ROAD — MEETING VEHICLES — NEGLIGENCE.

Where defendant was traveling at night in a track on the right hand side of the wrought portion of the highway, and met plaintiff who was traveling in the same track, whether defendant exercised ordinary care in voluntarily turning his horse to the left to avoid a collision was at most a question

for the jury, and an instruction stating that in such case there was not a want of ordinary care was properly refused.

9. TRIAL—INSTRUCTIONS — CONSTRUCTION — CHARGE AS A WHOLE. An instruction in a personal injury case stating that plaintiff might recover for pain, suffering, and mortification experienced, and, in case the injury was permanent, that to be experienced, "also such further damages as will compensate plaintiff for his loss of capacity and prospects of life," *held,* not objectionable as permitting recovery for loss of earning capacity not proved, where the jury were elsewhere instructed that there could be no recovery for time lost or for diminished earning capacity, more especially as the amount of the verdict did not indicate misapprehension as to the elements of recovery.

Error to Ionia; Miner, J., presiding. Submitted June 3, 1908. ( Docket No. 5.) Decided June 27, 1908.

Case by James Buxton against Thomas Ainsworth for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*R. A. Hawley,* for appellant.

*Morse & Locke,* for appellee.

MONTGOMERY, J. This is an action to recover damages resulting from an injury suffered in a collision between vehicles driven by plaintiff and defendant respectively. The case has once had the attention of this court, and is reported at length in 138 Mich. 532, where the facts are fully stated. The facts appearing upon the second trial do not differ very materially from those given in the reported case, and except as noted in the discussion of the several exceptions taken, it will not be necessary to advert to the testimony. There are a large number of assignments of error, some of which are not discussed. We shall deal with such as we deem worthy of notice in the order adopted by counsel.

The first assignment of error is to permitting the following question to be put to a witness for the plaintiff who

had been called to the place of collision and the place where the collision occurred pointed out to him:

"At the place pointed out to you, where the collision took place, a vehicle coming from the south to that point, could they have passed around on the east side providing that a vehicle was on the traveled track on the east side of the highway that was there at that time in front of that place?"

The answer to this question was:

"Yes, there was no object that would have detained or kept the vehicle from passing. Of course, it wasn't a good road. If the location of Buxton's buggy was as pointed out to me, there would have been ample room, nine feet of good road."

It is objected that this question called for the opinion and conclusion of the witness upon the point as to whether there was room for the defendant to pass in the highway, and it is said that it was a bare proposition of fact upon which expert or opinion testimony was inadmissible. Whatever the question may have been deemed to have called for, the answer is not objectionable as being in the nature of opinion evidence. The witness states three things: *First*, that there was no object that would detain or keep the vehicle from passing; *second*, a conclusion in defendant's favor—it was not a good road; *third*, that if the location of Buxton's buggy was as pointed out to him, there would have been ample room, namely, nine feet of good road.

The next objection is to the testimony of the doctor who had attended the plaintiff. The question was:

"When you were taking care of him what did you consider was the best treatment for him, what did you advise?"

The witness answered that he advised complete rest and to keep the plaintiff in bed; that he did not think plaintiff required drugs or that drugs in and of themselves would effect a cure; that it would be unnecessary to have frequent visits from him, but that he could be called when-

ever necessary. It is said that the real purpose of this question was to furnish the jury an attempted excuse for the slight medical treatment furnished the plaintiff for such a serious injury as is claimed in this case—the doctor having been called but 17 times and having prescribed about 20 times. A sufficient justification for receiving testimony for that purpose is that in our opinion it is precisely what the testimony is competent for. It might have been made a subject of argument that this plaintiff was slightly injured if he required only 17 calls from a physician. It was entirely competent to meet any such argument, which is implied in the present brief, by showing the reason why, in the opinion of the medical attendant, such calls were not essential, a reason not inconsistent with the fact of serious injuries.

The third assignment of error relates to testimony offered as to plaintiff's habits of industry. We think this testimony was competent. The case of *MacQuisten* v. *Railway Co.*, 150 Mich. 332, is cited to sustain defendant's contention that it was incompetent. That was a case under the death act, and it was clearly indicated that the opinion was not intended to extend to other cases. But in the later case of *Shall* v. *Railway*, 152 Mich. 463, we have held testimony of this character competent in such a case as the present.

The fourth, fifth, sixth, and seventh assignments of error relate to questions put to the defendant's witness, Robert Ainsworth, who was defendant's father, on the cross-examination, which were put with the purpose of showing the interest Robert Ainsworth had in the result of the litigation. The questions were as to whether he didn't claim to own everything that Thomas had, and whether he knew anything about Thomas having deeded all his land to him, and whether, although he had replevined all the personal property in the possession of Thomas and levied upon under the execution for costs in the original case, he had given such property in for taxation. We think that all the questions were in the discre-

tion of the trial court. The objection to the following question:

"Now, did you know anything about your son Thomas on the 29th of June, 1903, just before judgment was entered in this case, deeding to you all of the land held in his name at that time?"

that it was an attempt to show by parol a conveyance of land might, if it be considered that the question was directed to showing the fact of the conveyance rather than the knowledge of the witness of the fact, be open to some question were it not for the fact that the witness had just testified that he claimed, at the moment when he was on the stand, that he owned everything that defendant, Thomas, had, which in our judgment renders the other question immaterial, and if there was error, it was not prejudicial.

Error is assigned upon certain portions of the charge of the court. First, the following:

"If the jury should find that the plaintiff was driving in the traveled track and on the approach of the defendant and as soon as he saw him, the plaintiff attempted to turn to the right and was in fact in the act of turning to the right and the defendant did not turn to the right, and defendant was guilty of negligence, thereby causing the collision and the plaintiff would be entitled to recover, as it is the duty of the defendant to seasonably turn to the right as well as for the plaintiff."

It is argued that this instruction contained the vice of failing to put upon the plaintiff the duty of maintaining any outlook to discover approaching vehicles. There would be some force in this criticism if the effort had been made to state abstractly the rule of law defining plaintiff's duty on the highway, or if the claim of plaintiff had been that the defendant appeared suddenly before him so that he hadn't ample time to make the turn. But that is not this case. It appeared on the former trial, and also appeared on this trial, that the plaintiff freely admitted that he saw the defendant coming quite a ways away. It was

not the theory of the plaintiff, therefore, nor could the jury so have understood it, that the defendant suddenly ran him down. The jury could make no mistake in interpreting this instruction.

The eighth and ninth requests, which were refused, were, so far as they were competent, sufficiently covered by the general instructions of the court.

The defendant's sixteenth request asked an instruction that—

" If the defendant was driving northward on the road in question, in the east traveled track of the road as described in the evidence, and that in the darkness he suddenly came upon plaintiff's vehicle coming southward in or near the same track, and that he voluntarily or involuntarily turned his horse suddenly to the left in order to avoid the danger which thus confronted him, he would not be guilty of negligence or want of ordinary care in so doing."

We think this request was properly refused. It was at most a question for the jury as to whether, suddenly becoming aware of the situation, it was ordinary care to voluntarily turn his horse suddenly to the left.

The defendant submitted two requests to charge upon the subject of loss of time and earning capacity of plaintiff, one of which was:

" There being no evidence in this cause of the value of plaintiff's time lost by reason of the injuries sued for, nor any evidence of how much he could earn before the injury, there is no basis for any money estimate of the value of such time and there can be no recovery for the time lost or for diminished earning capacity on account of such injuries."

This request was given. Another request was preferred stating that there was no basis for any money estimate of plaintiff's future damages on account of the impairment of his earning power, and there could not be any recovery for diminished earning capacity on his part in the future. This was not given. The circuit judge in the course of his instructions stated that plaintiff, if entitled to recover,

would be entitled to recover reasonable compensation for his fright and shock at the time of the collision, for his pain and suffering—

"For his anxiety and suspense, nervous prostration and sickness occasioned thereby, and for such mental strain and mortification by reason of being obliged to use or depend upon crutches, canes, or other inconveniences for the purpose of locomotion or otherwise, as the jury shall find from the evidence the plaintiff to have experienced in consequence of the collision; and if permanently injured thereby, then such further compensation for bodily and mental pain, suffering, mortification and inconvenience as plaintiff may be obliged to endure hereafter; also such further damages as will compensate plaintiff for his loss of capacity and prospects of life."

It is claimed by the defendant that the jury would understand these instructions as permitting recovery for loss of capacity to earn money. In view of the fact that the court had distinctly charged the jury that the plaintiff could not recover for loss of time or for diminished earning capacity on account of such injuries, we do not think the jury could have been misled by this instruction. If the verdict had given evidence by the amount of it that there was reasonable ground to believe that the jury had misapprehended the instruction, and that defendant had suffered by reason thereof, we should consider this question more serious. But the verdict in this case was $500, an amount which in itself indicates that the jury could not have understood the instruction as warranting an award of damages for decreased capacity of earning money in the future.

We think no error to the prejudice of the defendant is shown on this record.

The judgment is affirmed.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.