MICHAEL DOYLE *vs.* WEST END STREET RAILWAY
COMPANY.

Suffolk.    March 8, 1894.—June 21, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Personal Injuries caused by Electric Car — Negligence — Due Care — Regulations of Board of Aldermen — Instructions to Jury.*

The question what is an "appearance of danger" within the meaning of section 25 of chapter 6 of the Revised Regulations of 1892 of the Board of Aldermen of the city of Boston, which provides that no person having control of a street car shall, "on the appearance of danger" to carriages or persons, "fail to stop the car in the shortest time and space possible," depends upon all the attendant circumstances, and usually must be left to the jury.

In an action for personal injuries it appeared that, while the plaintiff and a man employed by him were pulling in a street on a rope attached to a tree on private land, the plaintiff was struck by an electric car of the defendant. The plaintiff objected to the judge's reference to the case of *Chisholm* v. *Old Colony Railroad*, 159 Mass. 3, as "instructive," and as "applicable in part," and not as conclusive. The jury were not instructed that the same rule applied to a railroad operated by steam, and to a street railway operated by electricity, but the judge remarked that "to some extent it is undoubtedly true that a motorman would have the right to assume that a person who was in the position of danger would withdraw from it, that he would hear the gong as sounded, and would take some other position," and the question was left to the jury, who were further instructed that, "if the motorman, had he been careful himself, should have seen that there was the appearance of danger, it was then his duty to stop the car as speedily as possible, and if he did not stop the car as speedily as possible, and because of the failure to stop it the plaintiff was injured, while the plaintiff was himself in the exercise of due care, the plaintiff is entitled to a verdict." The jury returned a verdict for the defendant. *Held*, that the plaintiff had no ground of exception.

TORT, for personal injuries occasioned to the plaintiff by being struck by an electric car of the defendant. At the trial in the Superior Court, before *Blodgett*, J., the following facts appeared.

The plaintiff was engaged at about 2.30 P. M. on Saturday, July 23, 1892, in taking down a tree standing upon private land abutting upon Warren Street, a public highway in Boston, sixty feet in width, having been employed for that purpose by the owner of the land. The tree stood about ten feet back

from the line of the street, and about six feet above the level of the sidewalk, with other trees on either side of it, and a house in process of construction immediately back of it. The plaintiff had cut off the top of the tree about thirty feet from the ground, had attached a long rope to the top of the remaining portion, lopped off the boughs, and made a cut with the saw nearly through the trunk about eighteen feet from the ground on the side away from the street, and then descended into the street to pull the top of the tree down. Upon the defendant's tracks on Warren Street it ran its cars by electricity, and the rail nearest the tree was twenty-three feet from the edge of the highway nearest the tree, and thirteen feet from the edge-stone of the sidewalk.

The evidence for the plaintiff tended to show that he, and one Sheehan employed by him, took hold of the end of the rope and went out into the street as far as the nearest track of the defendant; that, seeing or hearing no car approaching, they took their stand and began to pull upon the rope, the plaintiff standing directly over the rail nearest the tree with one foot inside and the other outside of the rail, and Sheehan standing just outside of it, the plaintiff with his back towards the direction of the city proper, and Sheehan facing him just off the rail on the side towards the tree; that while so engaged pulling on the rope, with their attention fixed upon the tree, and upon the protection of travellers on the sidewalk and of the house from the falling trunk, and after they had stood there long enough to give several pulls upon it, an electric car of the defendant coming from the direction of the city proper struck the plaintiff violently upon the left shoulder, breaking his collar bone, throwing him down, and severely injuring him, and the front part of the car passed over his body until the forward wheels reached him, when the car was stopped; that neither the plaintiff nor his companion saw or heard the approaching car, or had any warning of its approach until the plaintiff was struck by it; that the bell was not struck by the driver; and that the top of the tree came down just at the moment when the car struck the plaintiff.

The testimony for the defendant tended to show that the defendant's motorman saw the men pulling upon the rope at-

tached to the tree when the car was still several hundred feet away ; that the plaintiff's back was towards the car , that the men were near to but several feet outside of the track towards the sidewalk, and as the car got near to them were stepping back towards the track as they pulled ; that as the car got near the plaintiff the motorman reduced the speed from three or four miles an hour to about two miles an hour ; that just as the car reached the plaintiff the tree came down, and the plaintiff lost his balance and fell backward immediately in front of the car ; that when the car stopped a part of the plaintiff's body was upon the track and under the front platform, and the other part outside of the track, but the car stopped before the forward wheels, which were about three feet six inches back from the front of the dasher, reached him ; that the car did not knock the plaintiff down, nor strike him before he fell ; that whatever injuries he sustained were caused by his fall to the ground, or by the under side of the front part of the car striking him after he was down, or by both causes combined ; and that the gong was struck repeatedly as the car approached.

The plaintiff put in evidence the following sections of chapter 6 of the Revised Regulations of 1892 of the Board of Aldermen of the city of Boston, in force at the time of the accident, for breaches of which both the motorman and his employer are punishable by fine :

" Sect. 23.  No person having the control of the speed of a street railway car shall allow it in any street to go against or afoul of any person, vehicle, or thing whatsoever ; nor shall any such person fail to stop his car at any place in a street when directed by a police officer so to do.

" Sect. 24.  No person having the control of the speed of a street railway car passing in a street shall fail to keep a vigilant watch for all teams, carriages, and persons, especially children, nor shall such person fail to strike a bell several times in quick succession on approaching any team, carriage, or person, and no person shall, after such striking of a bell, delay or hinder the passage of the car.

" Sect. 25.  No person having the control of the speed of a street railway car passing in a street-shall, on the appearance of

danger to any team, carriage, or person from or on the appearance of any obstruction to his car, or any animal, if any there be, drawing the same, fail to stop the car in the shortest time and space possible."

The plaintiff requested the court to give the following instructions to the jury:

1. If the defendant's driver failed to stop the car in the shortest time and space possible upon the appearance of danger to the plaintiff, as required by § 25 of chapter 6 of the Regulations of the Board of Aldermen, such failure was an unlawful act of the defendant, and if such unlawful act caused the alleged injury to the plaintiff, the defendant was not in the exercise of due care, and the plaintiff would be entitled to recover if he was himself in the exercise of due care. 2. If the plaintiff and Sheehan did not either of them in fact hear the bell, and were not either of them aware of the approach of the car, and if the defendant's driver saw, or as a reasonably intelligent and prudent man ought to have seen, as he got near them, that neither the plaintiff nor Sheehan was aware of the approach of the car, and that the plaintiff was standing on the rail with his back towards the car, there was " the appearance of danger" to the plaintiff within the meaning of § 25 of the Regulations, and it was the driver's duty, if possible, to stop the car before it reached the plaintiff, provided that he was not wilfully, maliciously, or unreasonably obstructing the defendant in the use of its tracks; and if he failed to so do, and such failure caused the alleged injury to the plaintiff, the defendant was negligent, and the plaintiff would be entitled to recover if he was making a reasonable use of the highway and was in the exercise of due care. 3. If the plaintiff and Sheehan did not either of them in fact hear the bell, and were not either of them aware of the approach of the car, and if the defendant's driver saw, or as a reasonably intelligent and prudent man ought to have seen, as he got near the plaintiff, that neither he nor Sheehan was aware of the approach of the car, and that the plaintiff was standing with his back towards the car, and so near the rail and so employed temporarily that he was likely, in the natural course of the work he was doing, to come or fall suddenly in front of the car at any moment, there

was "the appearance of danger" to the plaintiff, within the meaning of § 25 of the Regulations, and it was the driver's duty if possible to stop the car before it reached the point abreast of which the plaintiff was standing, provided that he was not wilfully, maliciously, or unreasonably obstructing the defendant in the use of its tracks; and if the driver failed to do so, and such failure caused the alleged injury to the plaintiff, the defendant was negligent, and the plaintiff would be entitled to recover if he was making a reasonable use of the highway, and was in the exercise of due care.

The judge gave the first instruction prayed for, but refused to give the second and third instructions; and instead thereof gave certain instructions to which the plaintiff did not except.

The judge then instructed the jury further as follows:

"What does § 25 mean? Does it mean that, whenever the motorman discovers that there is a person upon the track, or standing in such a position in the street that, if he remains there, there will be a collision, he must stop the car? Not at all. You must find, in order to find that there was any failure to comply with this regulation, that there was the appearance of danger, and that means that there was such a condition of things that a person of ordinary prudence, intelligence, and discretion would be apprehensive of danger, and would therefore feel it to be his duty to stop the car because there was an apprehension of danger, and because the regulation required that the car should be stopped. But suppose that the person who was in fact injured by collision with the car down to the instant of the collision is standing several feet one side, and that if he remains in that position it is plain that he would not be struck by the car, is that or is it not a case where, within the meaning of this regulation, there is the appearance of danger which calls upon the motorman to stop the car in the shortest time and space possible? That question cannot be answered affirmatively or negatively by me. It is a question for you, and you would ordinarily need some other facts than the fact I have supposed to enable you to answer it intelligently.

. "Suppose that the motorman saw a person standing in

the street near the rails along which the car is to go, and that such person was plainly intoxicated, but if he did not change his position he would not be hit by the car. I cannot say that a jury would not be justified in finding, in view of the condition of the man, that this regulation made it the duty of the motorman to stop the car. If a person was in that position, but apparently in a fit or in convulsions at the time, it might be the duty of the motorman to stop the car, notwithstanding it was quite clear that there would be no collision and no injury to such person if he remained in the same position.

" Where was the plaintiff when it became the duty of this motorman to stop the car to avoid a collision, if you find that it was necessary at any time to stop it to prevent a collision? Suppose the plaintiff took his stand upon the track, having one foot on one side of the rail and the other foot on the other side, and suppose he was discovered in that position by the motorman when the car was at a distance of fifty feet, or twenty-five feet, or a hundred feet, . . . and suppose the motorman then rung the gong and the speed of the car was slackened, what had the motorman a right to assume as to the probable conduct of the person who was upon the track? · This regulation does not apply unless you find that there was such a condition of things that a person of ordinary prudence and intelligence would say under exactly the same circumstances that there was an appearance of danger. To some extent, it is undoubtedly true that a motorman would have the right to assume that a person who was in the position of danger would withdraw from it; that he would hear the gong as sounded, and would take some other position. And here there is a sentence or two which I may read, instructive as bearing upon this point, from the case of *Chisholm* v. *Old Colony Railroad*, 159 Mass. 3. It was contended that the Old Colony Railroad Company was in fault because it did not stop its train of cars, in view of the fact that the person who was injured was at the time attempting to remove a telegraph pole which had fallen down and part of which was over one of the rails, but I think not the pair of rails along which the train was moving. It did appear that the speed was slackened, and that the whistle was sounded and the bell was

rung; but the contention of the plaintiff was, that it was the duty of the engineer, seeing the man in this position, to stop, and that an action could be maintained because of the failure to stop; but the Supreme Court used this language, and it is language applicable in part to the case you are trying: ' Merely seeing one or more men on a railroad track at a distance, unless they appear to be helpless or disabled, does not ordinarily make it the duty of an engineer to stop a train. Especially where men are at work upon or by the side of a railroad track, it may ordinarily be expected that they will look out for the trains.'

" What had the motorman in this case the right to expect? The plaintiff says, that in view of what the plaintiff was doing, and what it was apparent to the motorman that he was doing, exerting his strength upon this rope, the motorman must have seen that there was some risk, especially when the tree broke, that the body of the plaintiff would approach nearer the track, even if he was not standing upon the track, and that for that reason it was the duty of the motorman to stop the car. That is a proper consideration. You will give it such weight as it ought to have; but there is something to be said upon the other side. . . . Was there anything in the work of the plaintiff which made it necessary that he and Sheehan should at that particular time, and before the car passed the place where they were, pull down the top of that tree? Might they not have waited until the car passed? Was there an exigency which entitled them to say, ' The car must wait and the passengers upon the car must wait until this work is done, rather than that we should wait until the car has gone by '? Those are matters for your consideration.

" What had the motorman . . . the right to believe, as he approached the place where the plaintiff was? What had he the right to believe that the plaintiff would do in view of what he saw, in view of what he ought to have known? If the motorman, had he been careful himself, should have seen that there was the appearance of danger, it was then his duty to stop the car as speedily as possible, and if he did not stop the car as speedily as possible, and because of the failure to stop it the plaintiff was injured, while the plaintiff

was himself in the exercise of due care, the plaintiff is entitled to a verdict.

"But you need to inquire not only as to whether the plaintiff was struck by the car, but whether the plaintiff was in such a position that he would necessarily be struck by the car if he did not change his position, and was in such position for some little time before the car reached the place where the plaintiff stood, or whether the position of danger was taken by the plaintiff at the moment, or within a very short time before the actual collision. Suppose the plaintiff, pulling upon this rope when the tree broke, either fell or was thrown back, and that the fall or the throwing back of his body caused the collision. Then the question would be whether the car was stopped as soon as it could be stopped, as required by this regulation, and whether there was any violation of the regulation itself, construing it as I have told you it should be construed, because I propose to give you an instruction in the exact language in which I am asked to give it by the plaintiff with reference to this regulation, and it is as follows." The judge then repeated the plaintiff's first request for instructions.

The judge also instructed the jury as follows:

"If the defendant's driver failed to strike the bell as required by section 24 of chapter 6 of the Regulations of the Board of Aldermen, such failure was an unlawful act of the defendant; and if such unlawful act caused the alleged injury to the plaintiff, the defendant was not in the exercise of due care, and the plaintiff would be entitled to recover, if he was himself in the exercise of due care.

"If the defendant's driver allowed the car to go against or afoul of the plaintiff in violation of section 23 of chapter 6 of the Regulations of the Board of Aldermen, when he had the power to prevent it, such action was an unlawful act of the defendant; and if such unlawful act caused the alleged injury to the plaintiff, the defendant is liable, if the plaintiff was in the exercise of due care.

". . . If the plaintiff has proved that there was no carelessness on his part which contributed to the injury, and if he has proved a violation of any one of the regulations which I have read, and that such violation caused the injury which it is

acknowledged that he received at the time, the plaintiff is entitled to a verdict. But if he has not proved the things to which I have called your attention, . . . it will be your duty to return a verdict for the defendant."

At the close of the instructions, the plaintiff's counsel called the judge's attention especially to those parts in which the case of *Chisholm* v. *Old Colony Railroad* was cited, and quoted from as an authority, and the rules of law applicable to a steam railroad in the case of mere trespassers or licensees upon its tracks were applied to the case at bar, and in which it was said that the motorman might assume that the plaintiff would get out of the way or remain there at his peril, and might proceed accordingly without stopping his car. The plaintiff objected to the same as erroneous, and misleading to the jury. The judge declined to modify the instructions, and the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in March, 1894, and afterwards was submitted on the briefs to all the judges, except *Holmes*, J.

*H. W. Putnam*, for the plaintiff.

*M. F. Dickinson, Jr.*, for the defendant.

LATHROP, J. Under the instructions of the court, the jury must have found either that the plaintiff was not in the exercise of due care, or that the defendant was not guilty of negligence.

The second and third requests for instructions were properly refused. In effect, the presiding justice was asked to rule that certain supposed facts would of themselves amount to an " appearance of danger " within the meaning of the regulation of the board of aldermen, and that it was then the duty of the driver to stop his car, if possible, and if he failed so to do, and such failure caused the injury, the defendant was negligent. But the facts supposed did not of themselves alone amount to an " appearance of danger." What is an " appearance of danger " depends upon all the attendant circumstances, and usually must be left to the jury. In this case, the court could not rule that on all the facts there was an " appear-

ance of danger," nor that the facts supposed in the requests, taken by themselves alone, necessarily constituted an appearance of danger.

We find no error in the instructions given of which the plaintiff has the right to complain. The principal objection of the plaintiff is to the reference made by the presiding judge to the case of *Chisholm* v. *Old Colony Railroad*, 159 Mass. 3. The judge referred to the case as " instructive," and as " applicable in part," and not as conclusive of the question before the jury. The jury were not instructed that the same rule applied to a railroad operated by steam, and to one running in a city and operated by electricity. The remark of the judge that " to some extent it is undoubtedly true that a motorman would have the right to assume that a person who was in the position of danger would withdraw from it, that he would hear the gong as sounded, and would take some other position," we have no doubt is a correct exposition of the law. To what extent he would have the right to assume this was left to the jury. And they were further instructed that, " if the motorman, had he been careful himself, should have seen that there was the appearance of danger, it was then his duty to stop the car as speedily as possible, and if he did not stop the car as speedily as possible, and because of the failure to stop it the plaintiff was injured, while the plaintiff was himself in the exercise of due care, the plaintiff is entitled to a verdict."

*Exceptions overruled.*