CHAPMAN *v.* STRONG.

1. HIGHWAYS—AUTOMOBILES—MOTOR VEHICLE LAW—NEGLIGENCE —CONTRIBUTORY NEGLIGENCE.

Under conflicting claims and evidence of the respective parties, in an action for negligent conduct in operating an automobile, resulting in plaintiff's horse becoming frightened and overturning his buggy, the question of contributory negligence *held* to be a question of fact.[1]

2. SAME—NEW TRIAL—WEIGHT OF EVIDENCE.

On motion for a new trial the verdict is *held* not to be against the weight of the evidence.

[1]As to duty and liability of operator of automobile with respect to horses encountered on highways, see note to *Mahoney* v. *Maxfield* (Minn.), 14 L. R. A. (N. S.) 251.

As to law governing automobiles generally, see note to *Christy* v. *Elliott* (Ill.), 1 L. R. A. (N. S.) 215.

3. SAME—NEGLIGENCE—DIRECTING VERDICT.

    Evidence that defendant did not stop his automobile when plaintiff signaled to stop, and that he failed to turn out sufficiently to permit plaintiff to pass, although contradicted by defendant's witnesses, raises an issue of fact as to the negligence of the defendant.

4. TRIAL—INSTRUCTIONS TO JURY—REFUSAL.

    No error is committed in refusing requests to instruct the jury, which are covered by the general charge.

5. SAME—SPECIAL QUESTIONS—STATUTES.

    It is proper to refuse to submit a special question which does not meet the statutory requirements. 3 Comp. Laws, § 10237.

6. SAME—CROSS-EXAMINATION.

    The circuit judge did not abuse his discretion in permitting cross-examination of defendant and his witnesses relative to their whereabouts on the day of the injury and the amount of intoxicants used by them.

Error to Kent; McDonald, J. Submitted June 14, 1910. (Docket No. 5.) Decided September 27, 1910.

Case by Charles M. Chapman against James M. Strong for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Powers & Eardley*, for appellant.

*Myron H. Walker*, for appellee.

MOORE, J. Plaintiff, in July, 1908, was driving his horse down a long hill, when he met an automobile driven by the defendant. His horse became frightened. The buggy was overturned. The plaintiff was hurt. Claiming it was the negligence of defendant which caused the injury, the plaintiff sued him. The case was tried before a jury. A judgment of $550 was recovered by the plaintiff, and the case is brought here by writ of error.

In view of the questions raised, the charge of the court becomes important. After stating the claims of the parties, the jury was instructed:

"'The burden of proof is on the plaintiff to establish by a fair preponderance of the evidence every fact necessary for his recovery in this action. Before he can recover he must satisfy you by a fair preponderance of the evidence of two things: *First*, that the defendant was negligent, and that such negligence was the proximate cause of the injury which the plaintiff received. *Second*, that he himself was not guilty of negligence which contributed in any degree to the injury. Unless the plaintiff has established both of these propositions by a fair preponderance of the evidence, he cannot recover.

"'When an injury is received by one person which is in part due to the negligence of another person, but it also appears that the person injured contributed to the injury in some degree by his own negligence, the law does not undertake to compare the relative negligence of each, but lays down the rule that, if the person injured contributed in any degree to the injury by his own negligence, he cannot recover, even though the other person was more negligent. For that reason the plaintiff in this case must show that the injury was caused by the negligence of the defendant, and that his own negligence did not contribute thereto.

"'Negligence is defined as a failure to observe for the protection of the interests of another person that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury. It is sometimes defined as a failure to perform a duty implied by law which one person owes to another person; it is in another sense the want of ordinary care. Ordinary care is such care as an ordinarily prudent person would take under the same or like circumstances. An automobile has the same right upon our public roads as carriages and other conveyances, but their construction and operation is such as to make them objects of fright to horses and other animals. To insure the safety of travelers and those who have to use the horse as a means of conveyance upon the highways, our legislature has defined the duties of a man who uses the automobile, and I will read to you some of those sections of the laws of 1905 and 1907 which have any application to this case. Section 14 provides:

"'Upon approaching a person walking in the roadway of a public highway, or a horse or horses, or other draft animals, being ridden, led, or driven thereon, a person operating a motor vehicle

162 MICH.—40.

shall slow down to a speed not exceeding ten miles per hour and give reasonable warning of its approach, and use every reasonable precaution to insure the safety of such person or animal, and in case of a horse, or horses, or other draft animals, to prevent frightening the same.' [Act No. 196, Pub. Acts 1905.]

"Section 15, which has more particular application to the case we have before us, reads as follows:

"'Any person operating a motor vehicle shall at request or on signal, from a person riding, leading, or driving a horse or horses, or other draft animals, guide such motor vehicle to the right of the wrought or traveled portion of the highway, and immediately bring such motor vehicle to a stop, and if requested, shall cause the motor of such vehicle to cease running so long as shall be reasonably necessary to prevent accident, and insure the safety of others. And it shall also be the duty of any male chauffeur or driver of any motor vehicle, and other male occupants thereof, over the age of fifteen years, while passing any horse or horses or other draft animals which appear badly frightened, or upon the request of the person in charge of and driving such horse or horses or other draft animals, to give such personal assistance as would be reasonable to insure the safety of all persons concerned to prevent accident.' [Act No. 196, Pub. Acts 1905.]

"Section 16 reads as follows:

"'Whenever a person operating a motor vehicle shall meet on a highway any other person riding or driving a horse or horses or other draft animals or any other vehicle, and there being no occasion to stop as above provided, the person operating such motor vehicle shall seasonably turn the same to the right of the center of the traveled portion of the highway; while the person approaching shall likewise turn from the center of the traveled portion of the highway so as to pass the motor vehicle on the opposite side of the center of the highway to which the motor vehicle has been turned. And any person so operating any motor vehicle shall, at the intersection of a public highway, keep to the right of the intersection of the centers of such highways, when turning to the right and pass to the right of such intersection when turning to the left.' [Act No. 196, Pub. Acts 1905.]

"That has not so much application to this case as section 15, which I have referred to in regard to signals and the warning to automobiles.

"Now the plaintiff claims that the defendant that day on the highway near Sparta disregarded and neglected the duties imposed upon him by the law, which I have just

read, that is, that he didn't stop his machine when signaled so to do; that he did not guide it to the right side of the traveled portion of the highway and give the plaintiff an opportunity to pass safely.

" If you find that he was thus negligent, and that such negligence caused plaintiff's injury, the plaintiff would be entitled to recover, providing he himself was not guilty of any negligence which contributed to the injury. But independent of these acts of the legislature which I have just read to you, the law imposes the duty upon the defendant of using reasonable care and caution in managing his automobile upon the public road. He is held to an exercise of ordinary and reasonable care in the management of his automobile so as to save others from injury.

" Now, then, if, in applying these rules to this case, you find that plaintiff's claim is true, namely, that his horse became frightened at defendant's automobile, and that he and his companion Rhodes signaled and called to the defendant, and that defendant saw or should have seen and heard them, but did not guide his automobile to the right side of the road and stop it and give plaintiff an opportunity to pass, he, the defendant, would be guilty of negligence, and if such negligence was the proximate cause, that is, the cause which produced the injury, the plaintiff would be entitled to recovery, provided, of course, as I have stated, that he himself was not guilty of any negligence that contributed to the injury. If the plaintiff has failed to show by a fair preponderance of evidence that the defendant was negligent, and that such negligence was the proximate cause of the injury—I say if the plaintiff has failed to show that, then you need not give the case further consideration, and your verdict should be for defendant.

" But if you find that the defendant was guilty of negligence that caused the injury, you will then consider the second question, namely, Was the plaintiff himself guilty of any negligence that contributed to the injury ? The plaintiff is held to the exercise of ordinary care for his own protection, such care as an ordinarily prudent man would use for his own protection under the same circumstances. This care should be commensurate with the apparent danger. Did the plaintiff, Chapman, at the time of this accident use ordinary care in protecting himself against danger ? In determining this fact you must consider the nature and disposition of the horse as shown by

the evidence and the plaintiff's knowledge of it. Also the danger as it appeared to him at the time, the character of the hill and road, and the appearance of the automobile, are all important matters for you to consider in determining whether the plaintiff used ordinary care in avoiding every apparent danger.

"If the plaintiff's horse was fractious, and plaintiff knew it, and if he believed that defendant would exercise ordinary care in managing his automobile, and yet danger to him was apparent, he would be negligent in driving toward the automobile under such circumstances. But plaintiff had a right to drive down the hill, and that act would not be negligent, providing he exercised ordinary care for his own safety in doing so. The plaintiff had a right to assume that the defendant would obey the law and stop his machine when requested, or when he saw evidence of fright in the horse, and so plaintiff had a right to continue down the hill if he believed he could safely do so by the exercise of ordinary care.

"These are questions for you to determine from the evidence. Did the plaintiff use ordinary care in protecting himself from apparent danger and dangers as they appeared to him under the circumstances at that time? As I have stated, if you find that the plaintiff was himself guilty of any negligent act, which in any degree contributed to his injury, he could not recover, and your verdict should be for the defendant. I also said that if the defendant was guilty of negligence, and such negligence was the proximate cause of the injury, and the plaintiff was free from negligence, then your verdict should be for the plaintiff."

Three special questions were submitted to the jury, which were answered by them as follows:

"(1) Was plaintiff entirely free from negligence even the slightest at time the accident occurred?

"A. Yes.

"(2) Could the plaintiff by the exercise of ordinary care have avoided the accident?

"A. No.

"(3) How far was the plaintiff from defendant when defendant first discovered the horse was frightened?

"A. About 60 feet."

A motion was made for a new trial, which motion was overruled.

The errors relied upon are stated by counsel to be the following:

"(1) The court erred in denying defendant's motion to direct the verdict for defendant on the ground that the testimony showed plaintiff guilty of contributory negligence which contributed to the injury and precluded him from recovering damages therefor.

"(2) The said judgment and verdict is erroneous, because the evidence shows the plaintiff guilty of contributory negligence and precludes his recovery.

"(3) That the said judgment and verdict is erroneous in that it is against the weight of evidence in the case.

"(4) That said judgment and verdict is erroneous, because there is no evidence showing negligence on the part of the defendant.

"(5) The court erred in refusing to instruct the jury as requested by the defendant in his fourth request.

"(6) The court erred in refusing to instruct the jury as instructed by the defendant in his sixth request.

"(7) The court erred in instructing the jury that the plaintiff was entitled to damages for the loss of his time.

" (8) The court erred in refusing to submit to the jury special question No. 4 as requested by the defendant.

" (9) The court erred in allowing counsel for plaintiff, against defendant's objection, to ask the witnesses Strong, Noble, and Ryan as to their whereabouts and as to whether or not they were drinking and intoxicated on the day of the accident, subsequent to the time it occurred.

" (10) The court erred in saying in the presence of the jury, while defendant's counsel was asking the plaintiff on cross-examination this question:

" '*Q.* You thought and believed Mr. Strong should have stopped, and you did not have to stop, is that it ?

" ' *The Court:* What difference does that make ?

" ' *Mr. Powers:* It is bearing on his negligence.

" ' *The Court:* I don't see how it has any bearing on this case at all, and I will sustain the objection. (Exception taken by Mr. Eardley.) '

" These remarks of the court were prejudicial and led the jury to believe that it would not be the duty of the plaintiff to stop, even if he knew his safety demanded it.

"(11) Because the verdict and judgment is the result of bias and prejudice on the part of the jurors against owners of automobiles."

1 and 2 may be considered together. They are based upon the claim. We quote from the brief of counsel:

"Plaintiff did not know, as he admits, whether defendant saw him signal or not. He knew his horse was afraid and knew he would have trouble, but still he drove on toward the oncoming automobile in a dangerous place, where the road is only 15 to 20 feet wide, and an embankment on the side of the road. The plaintiff did nothing whatever to apprise the defendant of the frightened condition of his horse. We submit that he should ask Mr. Rhodes to help him in controlling the horse, or that he should have had Mr. Rhodes get out and warn defendant, or that he should have stood up or in some way attracted the attention of the defendant. As a matter of fact, the signal given was no signal at all, but he drove on because he wanted the horse to know that he could control her. We insist that it was gross negligence in the plaintiff to drive rapidly down the hill knowing the actual danger, and this, too, when he did not know whether the defendant saw or heard the signal, and when there was nothing in the action of the horse to indicate to him that it was frightened."

This statement is a one-sided one of what the record shows. There is testimony to the effect that, while the horse was a spirited one, it could be controlled; that plaintiff did not see the automobile until he had started down the hill; that he could not well turn around; that there was room to pass; that plaintiff would have been successful in passing if defendant had turned to the right and given part of the highway; and that the defendant paid no attention to the plaintiff. Upon the record made, the question of the contributory negligence of plaintiff could not be decided as a legal one.

3. In disposing of the motion for a new trial, the judge held that the verdict was not contrary to the weight of the evidence. After reading the record, we are satisfied he was right about that phase of the case.

4. There is an abundance of evidence in the record that defendant did not stop when signaled to do so, and that he failed to give a share of the road. While the testi-

mony was contradictory, it was not so conclusive that it could be said as a matter of law that defendant was not negligent.

5 and 6. So far as the requests mentioned were good law they were fully covered by the general charge.

7. The record discloses in great detail what plaintiff was able to do before the accident, what he was able to do afterwards, and what he did do. It cannot be said, in the absence of any request or any intimation to the court, that what he said about damages for loss of time was likely to be misunderstood, or that it was misunderstood. The amount of the verdict would not indicate that the jury was misled.

8. Question No. 4 was not so framed as to meet the requirements of the statute.[1]

9. Mr. Strong was the defendant; Mr. Noble and Mr. Ryan were with him in the automobile. Each of them as a witness had given his version of the occurrence. The trial judge did not abuse the discretion possessed by him in allowing the cross-examination of these witnesses about which complaint is made.

It is not necessary to discuss the other assignments of error. The case was carefully tried.

Judgment is affirmed.

OSTRANDER, HOOKER, McALVAY, and BROOKE, JJ., concurred.

---

[1] The special question, No. 4, was as follows: Did plaintiff know the horse was afraid of automobiles and voluntarily assume the risk.—REPORTER.