BOUMA *v.* DUBOIS.

1. Automobiles—Negligence — Personal Injuries — Highways and Streets.

Where plaintiff and her daughter in crossing a public street in the evening looked either way for a street car and on crossing the track looked again in both directions, seeing no vehicle approaching, and were struck by defendant's automobile which was running at a high rate of speed, with two lights lighted, but obscured, as plaintiff claimed, by rain, the evidence being in conflict, the court properly submitted to the jury the questions of negligence and of contributory negligence.[1]

2. Same.

Where the court in his charge correctly stated under what conditions plaintiff would be held guilty of contributory negligence, and then instructed them that she would not *perhaps* be entitled to recover in that event, the use of the word "perhaps" was not reversible error when considered with the remainder of the charge which was full and correct.

3. Same—Instructions to Jury.

And it was not error to instruct the jury that defendant would be chargeable with negligence if he violated any of the statutory requirements, the jury being advised in a different part of the charge that such negligence must be the proximate cause of the injury to warrant a verdict for plaintiff.

4. Same.

The verdict being reasonable in amount and the court finding that the jury was not misled, an error in the charge permitting the jury to find damages for permanent loss of taste and smell, although such injury was not shown to be permanent, was not reversible.

5. Same—Trial—Cross-Examination.

The discretion lodged in the trial court to permit the examination of witnesses is not reviewable except in cases of its abuse.

---

[1] Duty of operator of automobile to stop in order to avoid collision with pedestrian, see note in 24 L. R. A. (N. S.) 557.

Duty and liability of person operating automobile on public street or highway, see note in 4 L. R. A. (N. S.) 1130.

Error to Superior Court of the city of Grand Rapids; Stuart, J. Submitted January 19, 1912. (Docket No. 135.) Decided March 29, 1912.

Case by Gesina Bouma against William J. Dubois for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Dunham & Phelps*, for appellant.

*Smedley, Linsey & Lillie*, for appellee.

MOORE, C. J. This is an action for personal injuries growing out of an automobile accident. The case was tried before a jury, which rendered a verdict in favor of the plaintiff for $600. A motion was made for a new trial, which motion was overruled.

The errors assigned and the discussion thereof make a liberal quotation from the charge of the court essential. We quote as follows:

"The plaintiff claims that on the night in question, in October last, she started out with her daughter, about a quarter to 7 o'clock, for church. They came to Grandville avenue, and proceeded south on Grandville avenue to very nearly the intersection of B street with Grandville avenue, and then attempted to cross Grandville avenue to reach the church; * * * that they started a little before they came to the intersection of the two streets, and proceeded in a southeasterly direction to the corner of B street on the east side of Grandville avenue; that when they entered upon the street she claims there was nothing coming or visible that was dangerous, and that they proceeded to cross the street until they got to the middle of the street; that at the center, between the two tracks of the street railway company, they stopped and looked in both directions to determine whether there was any danger ahead of them in continuing to cross the street; * * * that she saw nothing that would interfere with their proceeding, and that she attempted to go on, and on reaching the east rail of the east track, after crossing that, immediately something struck her and knocked her down and injured her, and carried her some

distance on the street, and it is claimed on her behalf that the defendant came very suddenly upon them, driving at a great rate of speed, and struck her with his automobile, and with such force that she was knocked down on the pavement and carried something like 50 feet, pushed on the brick pavement; that then the machine skidded and turned towards the curb, and was stopped.  The plaintiff claims that she was proceeding with due care in getting across the street, and was not negligent in any respect. It is claimed that she was seriously injured by a cut on the head and some cuts on her limbs and hip, and black and blue bruises on her body; that she was confined to her bed for a week and suffered pain, and after getting out of bed that she was around the house, unable to get out or do anything of any account, for something like six weeks, so that she was confined to the house seven weeks; and that then she was not fully recovered, but has suffered to some extent since, and has lost, by reason of the injury, her sense of smell and taste.  The plaintiff claims that the defendant was negligent, inasmuch as he had not the proper lights that could be seen; that he didn't blow a horn or ring a bell; and that he didn't slow down sufficiently at the crossing to have his machine under control, so as to prevent coming in contact with pedestrians who were crossing.

"On the other hand, the defendant claims that, before coming to this crossing, the two lights on his machine in front were lighted, and the light behind, in compliance with the law; that he had stopped a short distance above the street for the purpose of lighting a cigar, and that he started up on what they call slow speed, and was running at a slow rate of speed when he discovered these parties in the roadway, near the middle of the street, and between the railroad tracks; that he came near them and stopped the machine, and that these parties stopped, and he understood from their stopping that they had stopped to let him go by, and that he started up his machine to go by them, thinking they had stopped for the purpose of letting him pass, and that immediately on starting up his machine, and when he came right up to the plaintiff, she started at once to go across the street, and stepped in front of the machine at such a time that he had no opportunity to stop it before striking her, and that she was struck by the machine and knocked down, and that he stopped it within a very short distance, within five or six feet, and un-

loosened her, and got her up and took her home, and took care of her as well as he could, and he claims that he did comply with the requirements of the law in regard to everything that the act provides for in relation to running automobiles; that he had the lights lighted, that he sounded the whistle or blew the horn before coming to them, and that, on blowing the horn, they stopped, so that he supposed they were going to let him go by; and that it was only by reason of the plaintiff having suddenly stepped in front of the machine when it was too late for him to stop it that the accident happened. * * *

"In entering upon the consideration of this case, you must bear in mind that it is not every case of damage or an accident that a legal liability follows, and for which the person causing it or responsible for it in a way is liable. * * * It is only in those cases where the defendant has been negligent, has omitted to do some duty that he ought to have performed, that he owes to the public or to the other party, that a legal liability arises. And in a case of this kind, where the statute or law of the State imposes upon the person exercising a specific trade or calling, or running a machine, or anything of that kind, where it imposes certain duties upon him, it is incumbent upon him to comply with those provisions; and, if he does not comply with them as the law provides, then his noncompliance is construed in law to be negligence—an omission of duty that makes him liable by the mere act of neglecting to comply with the provisions that have been made in such cases. * * *

"So, as I say, the plaintiff in this case must make out, by a preponderance of the evidence, *first*, that the defendant has been negligent in this case, and that his negligence has caused or brought about the injury that is complained of; and, *second*, she must show by a preponderance of the evidence that she herself has not been negligent in any way to contribute to this result. Then, before we come to consider the matter of damages at all, it is necessary for the jury to find, and find by a preponderance of the evidence in behalf of the plaintiff, that those two things concur, that the defendant did not do his duty on that night in question by complying with the regulations that ought to have been complied with, and that he negligently ran his machine in such a way that it caused this injury; and, second, that she did all that was incumbent upon her to do, and did not in any way exercise or

use any negligence on her part which contributed to this unfortunate accident.  *  *  *

"If there were two lights lighted in front, and those lights correspond to the requirements of the statute, it would not make any difference whether the other two were lighted or not. The law provides simply that two lights shall be lighted, and describes (which I will give you later on) the character of the light and when those two lights are lighted, whether they are the upper or the lower ones. If they are of the character that is designated or mentioned in the statute, then it does not make any difference whether the other two are lighted or not, and the one tail light is lighted, so that there were two lights there; and whether they were of the character that the law requires you will have to determine from the circumstances in the case, and from the testimony that you have heard in regard to the matter. Several of the witnesses have testified in regard to these lights, and some of the defendant's witnesses in regard to seeing them several blocks, when they were coming from the other direction. It is claimed by the plaintiff that no horn was blown or bell rung at the crossing. It is claimed by the defendant, and some witnesses have testified with regard to it, that the horn was blown, and that when it was blown that the parties noticed it and stopped. Now, I am mentioning these things in particular, because they are requirements that the law makes which shall be taken care of; and, if you should find that any of them, as the law provides, were violated, that fact alone would make him liable. *  *  *

"The next point for you to consider is whether the plaintiff is negligent, because it is a rule of law of this State, in suits of this character, that, although the defendant may be negligent, yet, if the plaintiff, the party bringing the suit, is also negligent in any manner, so as to contribute to the injury, there can be no recovery. *  *  * And if she crossed the street without any reference to the automobiles, or anything else, coming upon her, and without looking at them or trying to protect herself against them, or was going across with an umbrella pulled down over her head in such a way that she could not see them, or if she, on this whistle being sounded, stopped and gave the defendant the idea that she was going to let him pass, and then stepped in front of the machine, when it came upon her, carelessly, she would

not be, perhaps, entitled to recover. But if she was exercising due care, looked, when she got to the middle of the street, as she claims, in both directions, and saw nothing and heard nothing, and was in a position where she could see, then she undoubtedly would not be negligent. A person, under such circumstances, must always exercise caution themselves, and do all that is within their power to avoid coming in collision with vehicles passing up and down the street.     * * *

"The owner of an automobile has the right to use the highways of this State, provided in using them he uses reasonable care and caution for the safety of others, and does not violate the law of the State. If the defendant operated his automobile on a public highway at such a high rate of speed as to prevent him from maintaining the control of it, the rate of speed is unreasonable, and he would be deemed to be negligent. In making use of a vehicle which is propelled at a high rate of speed largely in excess of the ordinary vehicles of travel, which is powerful and of great weight, the operator must enlarge to a commensurate extent the degree of vigilance and care necessary to avoid injuries which the use of his vehicle has made more imminent. And this is particularly the language of the statute in regard to the law. It is unlawful for any person to drive a motor vehicle upon the public highways of this State, during a period from one hour after sunset to one hour before sunrise, without displaying at least two lighted lamps on the front of such motor vehicle, the light of said front lamps to be visible at least 200 feet in the direction in which the motor vehicle is proceeding; and, if you find that the light of the front lamps on the motor vehicle operated by the defendant in this case on the night in question was not visible at least 200 feet in the direction in which said defendant was proceeding in said vehicle, defendant would be guilty of negligence.

"When approaching a person walking in the roadway of a public highway, the person operating a motor vehicle shall slow down to a speed not exceeding 10 miles an hour, and give reasonable warning of his approach, and use every reasonable precaution to insure the safety of such person. It was the duty of defendant, upon approaching the plaintiff in this case on the night in question, to slow down to a speed not exceeding 10 miles an hour; and if you find he didn't do so, but that his machine was running in excess of 10 miles an hour, said defendant was

violating the law of the State, and he was guilty of negligence towards the plaintiff.

"I charge you that it is the duty of the person operating a motor vehicle, on approaching an intersecting highway, and also in traversing an intersecting highway, to have said motor vehicle under control and operated at such speed as is reasonable and proper, having regard to the traffic then on the highway and the safety of the public. If you find that defendant, upon the night in question, while proceeding along Grandville avenue in his motor vehicle and approaching B street, didn't have his motor vehicle under control, and didn't operate it at such speed as was reasonable and proper, having regard to the traffic then on the highway and the safety of the public, then said defendant violated the law of the State and would, in law, be deemed to be negligent. Those are some of the elements that would make the defendant negligent on his part.

"And yet, if the jury find that there was negligence on the part of the defendant in the manner in which he drove and operated his automobile, and that the plaintiff was injured, still the defendant is not liable if, by using ordinary care, the plaintiff might have avoided the automobile and the collision and the injury. If you find that on the occasion in question the plaintiff didn't use ordinary care, or was herself guilty of negligence, which negligence contributed to the injury, then plaintiff cannot recover in this case. That, to entitle the plaintiff to recover damages for the injuries sustained by reason of the accident in question, she must show the injuries to have been attributable to the misconduct of the defendant, and under such circumstances as to exonerate herself from all negligence on her part.

"The burden of proof is on the plaintiff, not only to show the negligence and misconduct on the part of the defendant, but also to show ordinary care and diligence on her part. And if you find upon the occasion in question she was not exercising ordinary care and diligence, either in crossing the street in the manner in which she did, or in not discovering the automobile, or in not wearing her glasses, or in holding her umbrella in such position that she could not see the automobile, then she cannot recover. * * *

"If you find from the evidence in this case that the collision, the injury, was caused by the negligence of both

parties, or that the plaintiff's negligence concurred or contributed in producing the injury, the plaintiff cannot recover. I have told you several times that the plaintiff in cases of this kind must make out her case by a preponderance of the evidence, so that the evidence weighs down on her side, so as to make it preponderate in her favor. If it is evenly balanced, and you are unable to decide, by a preponderance of the evidence, any of these points that it is necessary for her to make out, she could not recover. * * *

"As I have said, then, gentlemen, the first thing for you to determine is, in regard to these two points, whether the defendant is negligent to such an extent as to make him liable, and then as to whether the plaintiff herself was entirely free from negligence. If you find that she was not free from negligence, or that he was not negligent, then that would end the case, and you should render a verdict of no cause of action; but if you find the other way on these two points, then you are next to consider the question of damages, what damages you shall give as resulting to the plaintiff in this case.

"In determining the question of damages in cases of this kind, where the plaintiff is a married woman, there are damages of two classes. The law still gives the husband a common-law privilege that he is entitled to her wages and her labor and such things, and she cannot recover for those. In other words, the husband can bring a separate action. He can, in this case, tomorrow, if he wishes to, for the loss of her time and the medical attendance, and many of those things that I might mention, and she cannot recover for those things. All that she is entitled to recover for in this case that I can think of—if I am wrong, I would thank you to correct me—is such sum as you may award her, if she is entitled to anything, for her pain and suffering; and, second, such sum as you may think she is entitled to for her loss of her taste and smell, if you find that that has occurred. Because loss of taste and smell is something that does not belong to the husband; that is a privilege belonging to the person themselves. So that, in submitting this to you, you would only find damages, if I understand the law correctly, in regard to those two matters. * * * You must simply give her what, in your judgment, is adequate and reasonable compensation, under all the circumstances, for what she has suffered, pain and suffering, and what she is liable to

in the future, if any, and also, in the same way, what would be reasonable compensation to her for the pleasure or practical use that her two senses of smell and taste might be to her during the rest of her life. * * * Simply determine what the facts are, and then measure those facts and weigh them, and award such damages as are proper and just and right under all the circumstances."

There are 30 assignments of error; but counsel group and discuss them as follows:

(1) The court should have directed a verdict for the defendant.

 (2) The court should have set aside the verdict and granted a new trial, on the ground that it was against the weight of the evidence.

(3) The charge of the court.

(4) The court's refusal to give defendant's requests.

(5) The reception of evidence over defendant's objections.

(6) Remarks of plaintiff's counsel.

The first two groups may be considered together. It was argued that there is no evidence that defendant was negligent in any way. It is stated that the automobile was going but seven miles an hour. It is insisted that if the plaintiff had stopped and looked she would have seen the automobile, because the view in the street was unobstructed, and therefore plaintiff is clearly guilty of contributory negligence. This argument overlooks or ignores the testimony offered on the part of the plaintiff, to the effect that no horn or other signal was given of the approach of the automobile; that the large lamps in front were not lighted; that, while the two oil lamps were burning, the glass in front of them was covered with rain, so that they could be seen but a little ways. The daughter describes the accident as follows:

"Before we attempted to cross the road, we looked and saw nothing coming either way. We had proceeded across the road just over the second track when the accident happened, and in going that distance we looked again to see if anything was coming, and saw nothing and heard nothing. We were just over the second track when the

automobile struck my mother; I was a little behind her.
The first thing I saw was the red automobile; it was right
on top of us.    I just had time to jump back, and it took
my mother right along.

"*Q.* Did you see your mother fall down?

"*A.* Yes, sir; I seen it strike her.    It happened just
like a streak of lightning.    I cannot tell.    I next saw the
automobile at the curb, and my mother was between the
curb and the automobile.    I stood there a while, and saw
them back up the automobile and pull her out."

There was testimony to the effect that the plaintiff, who
weighed upwards of 200 pounds, was pushed forward on
the pavement 60 feet after she was struck and thrown
to the pavement, and that her clothing upon the lower
part of her person was nearly all torn off.

In *Hennessey* v. *Gaylor*, 189 Mass. 583 (76 N. E. 224,
3 L. R. A. [N. S.] 345, 4 Am. & Eng. Ann. Cas. 396), it
was said, among other things:

"It cannot be said that there was a balancing of prob-
abilities by the plaintiff, with a willingness to take the
risk of safely getting over before the defendant came up,
as might have been the fact in *Whitman* v. *Railway*,
181 Mass. 138 [63 N. E. 334], or where, in a spirit of ap-
parent indifference, plaintiffs voluntarily have exposed
themselves to the chance of serious injury.

"If she had seen the defendant's machine approaching,
and decided it was sufficiently distant to enable her safely
to pass, she might have been found by the jury to have
exercised due care, though the accident proved that her
judgment was erroneous.    *Coleman* v. *Railway*, 181
Mass. 591 [64 N. E. 402].

"The defendant puts much emphasis on her language
that 'she did not see any automobile coming' contending
that she had seen it arrive and come to a stop before she
attempted to cross.    But it was for the jury to interpret
her meaning, and also to determine how far any failure
by her to more fully and carefully observe the amount or
kind of travel in the street was indicative of such want of
care as ought to bar her recovery.    *Wrinn* v. *Jones,* 111
Mass. 360; *Williams* v. *Grealy,* 112 Mass. 79; *Schien-
feldt* v. *Norris,* 115 Mass. 17; *Carland* v. *Young,* 119
Mass. 150; *Bowser* v. *Wellington,* 126 Mass. 391; *Shap-
leigh* v. *Wyman,* 134 Mass. 118; *Benjamin* v. *Railway,*

160 Mass. 3 [35 N. E. 95, 39 Am. St. Rep. 446]; *Murphy* v. *Transfer Co.*, 167 Mass. 199 [45 N. E. 93]; *McCrohan* v. *Davison*, 187 Mass. 466 [73 N. E. 553].

"There is no imperative rule of law which has been called to our attention generally requiring a pedestrian, when lawfully using the public ways, to be continuously looking or listening to ascertain if auto cars are approaching, under the penalty that, upon failure to do so, if he is injured, his negligence must be conclusively presumed. See *Robbins* v. *Railway*, 165 Mass. 30 [42 N. E. 334]. It has, indeed, been held that a traveler upon a highway, knowing that it is crossed by a railroad at grade, who passes onto the crossing without looking to ascertain if a train is coming, and is thereby injured, is guilty of such contributory negligence as to preclude his recovery. *Butterfield* v. *Railroad*, 10 Allen (Mass.), 532 [87 Am. Dec. 678].

"The reason for this rule was stated by Mr. Justice Morton, in *Allyn* v. *Railroad*, 105 Mass. 77, to be that—

" 'A railroad crossing is a place of danger, and common prudence requires that a traveler on the highway, as he approaches one, should use the precaution of looking to see if a train is approaching. If he fails to do so, the general knowledge and experience of men at once condemn his conduct as careless.'

"Outside, however, of such excepted portions as may be crossed at grade by a railroad, this requirement has not been applied to travelers in their daily and common use of our highways.

"The usual rule of ordinary care does not impose upon them the burden of being constantly on the lookout to see if their path is free from dangerous defects, or in a state of apprehension of personal injuries from other travelers. The traveler not only has a right to presume that the way is reasonably fitted for his use, but also that those who may be lawfully using it with himself will exercise a proper degree of care. *McGuinness* v. *Worcester*, 160 Mass. 272, 273, 274 [35 N. E. 1068], and cases cited; *Kerr* v. *Railway*, 188 Mass. 434 [74 N. E. 669]. See *Doyle* v. *Railway*, 161 Mass. 533, 542 [37 N. E. 741]."

In the case of *Gerhard* v. *Ford Motor Co.*, 155 Mich. 618 (119 N. W. 904, 20 L. R. A. [N. S.] 232), there is a discussion of the relative rights of the automobilist and the person in the highway. It will not be necessary to

repeat here what was said there. The testimony was very conflicting. It was properly submitted to the jury, both upon the question of the negligence of defendant and the contributory negligence of the plaintiff.

Counsel call special attention to the following excerpts from the charge:

" It is claimed by the plaintiff that no horn was blown or bell rung at the crossing. * * * Now, I am mentioning these things in particular, because they are requirements that the law makes which shall be taken care of; and, if you find that any of them, as the law provides, were violated, that fact alone would make him liable."

The court also said to the jury:

" The law provides that the running of automobiles, I believe, may, in cities, except in the business streets downtown, crowded streets, may be run at the rate of 15 miles an hour, except when, especially at night, they are approaching some one that is crossing the street, in which case they must slow down to 10 miles an hour. That would be the requirement that would be enforced at this crossing. Whether he violated this provision, or the provision as to the lights, or the provision as to the horn, is for you to determine. If you find that the defendant did violate any of these, omitted to comply with them, it would be deemed negligence on his part."

Counsel say:

" From this language, the jury couldn't help but get the impression that if he did anything that the law said he shouldn't do, they must find for the plaintiff, regardless of whether it had anything to do with the accident, or whether the plaintiff herself was guilty of contributory negligence."

We again quote from the brief of counsel:

" The court also said:

" 'And if she crossed the street without any reference to the automobiles, or anything else, coming upon her, and without looking at them or trying to protect herself against them, or was going across with an umbrella pulled down over her head in such a way that she could not see them, or if she, on this whistle being sounded,

169 Mich.—28.

stopped and gave the defendant the idea that she was going to let him pass, and then stepped in front of the machine, when it came upon her, carelessly, she would not be, perhaps, entitled to recover.'

"There wouldn't be any 'perhaps' about it, and the court should not have qualified that statement by such a term. The way he used it the jury couldn't escape the impression that, under such circumstances, the plaintiff might or might not be guilty of contributory negligence."

These portions of the charge should be read in connection with the rest of it. If this is done, the charge is not misleading, because the jury was repeatedly told that, unless the negligence was the proximate cause of the accident, and the plaintiff free from contributory negligence, there could be no recovery. A reference to the charge from which we have so fully quoted will show that in this same connection the jury was told, over and over again, correctly, what the rule of law is. While the use of the word "perhaps" was unfortunate, we do not think the jury was misled. It has been said:

"Where the charge of the court, taken as a whole, correctly states the law as applicable to the particular case, and clearly defines the issue, the fact that sentences are objectionable, when considered independent of the context, does not constitute reversible error." *Provose* v. *Brueck*, 110 Mich. 136 (67 N. W. 1114).

See, also, *Smalley* v. *Railway Co.*, 131 Mich. 560 (91 N. W. 1027); *Beattie* v. *City of Detroit*, 137 Mich. 319 (100 N. W. 574); *Whelpley* v. *Stoughton*, 119 Mich. 314 (78 N. W. 328).

We again quote from the brief of counsel:

"In that regard, the court said, 'what would be reasonable compensation to her for the pleasure or practical use that her two senses of smell and taste might be to her during the rest of her life.' Thus the plaintiff was permitted to recover damages for the loss of the senses of smell and taste for the rest of her lifetime, however long that might be, when there was absolutely no evidence that such a condition, even if it did exist at the time of the trial, would last her entire lifetime, or a year or a week."

Another reference to the charge will show that the court told the jury:

" All that she is entitled to recover for in this case that I can think of—if I am wrong I would thank you to correct me—is such sum as you may award her, if she is entitled to anything, for her pain and suffering; and, second such sum as you may think she is entitled to for her loss of her taste and smell, if you find that has occurred."

The plaintiff testified that as the result of the accident she had lost her sense of taste and smell, and that this loss continued at the time of the trial, which was nine months after the accident. There was testimony bearing upon the probable duration of this loss of taste and smell.

The attention of the judge was called to this portion of the charge in the motion for a new trial. In overruling the motion, he said:

"I have been very undecided and uncertain as to whether the court did not err in charging the jury as set forth in said ninth reason, especially in the use of the words 'during the rest of her natural life.' I dislike, as a rule, to compel parties to go through frequent trials, unless an error has been committed that seems not only reasonably plain to the court, but has also caused injury to one or the other of the parties. Under all the circumstances of this case, and considering the amount of the verdict, I do not feel the verdict was affected by the use of the language above quoted, or that there was any error committed that caused damage to the defendant."

There was testimony to the effect that plaintiff was a large woman, weighing 225 pounds; that she was dragged for a distance of about 60 feet; that the accident occurred about 6 :30 p. m.; that plaintiff was rendered unconscious, and some of the testimony shows that she did not regain consciousness until 10 a. m. the next day; that she received a wound in the back of her head, about three inches long; that her right hip was hurt and black and blue, her left limb was bruised at the knee, and it was open, and was black and blue, the whole leg; that she was confined to the house seven weeks, and the first time she went any

distance from home was on the eighth Sunday; that there was pain in her head four or five months. The injury happened October 10, 1909, and the case was tried July 5, 1910. At the time of the trial, she testified that she was still suffering from dizzy spells; that she lost a great deal of strength, and was not half as strong as she was before; that her sense of taste and smell were gone. The amount of the verdict has already been stated.

In the case of *Buxton* v. *Ainsworth*, 153 Mich. 315 (116 N. W. 1094), which was similar to the one before us, Mr. Justice MONTGOMERY, speaking for the court, said:

"It is claimed by the defendant that the jury would understand these instructions as permitting recovery for the loss of capacity to earn money. In view of the fact that the court had distinctly charged the jury that the plaintiff could not recover for loss of time or for diminished earning capacity on account of such injuries, we do not think the jury could have been misled by this instruction. If the verdict had given evidence by the amount of it that there was reasonable ground to believe that the jury had misapprehended the instruction, and that defendant had suffered by reason thereof, we should consider this question more serious. But the verdict in this case was $500, an amount which in itself indicates that the jury could not have misunderstood the instruction as warranting an award of damages for decreased capacity of earning money in the future."

See, also, *Farrand* v. *Aldrich*, 85 Mich. 593 (48 N. W. 628); *Chapman* v. *Strong*, 162 Mich. 623 (127 N. W. 741).

When the extent of the injury and the amount of verdict is considered, we are satisfied the jury was not misled.

Complaint is made because the judge declined to give some of defendant's requests to charge. So far as these requests were proper statements of the law, the general charge fully covered them.

The remaining assignments of error discussed by counsel grow out of the examination of a witness and the comments made by the attorney examining him. The record shows an apparent lack of frankness in the witness

and a continual succession of objections by counsel to the questions which were put. It is evident the trial of the case was pursued with great zeal by counsel on both sides. A good deal of discretion must be lodged with the trial judge as to the extent and manner of the examination of witnesses. We are not satisfied the trial judge abused this discretion.

Judgment is affirmed.

STEERE, MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.