HUFFMAN *v.* FIRST BAPTIST CHURCH OF FLUSHING.

1. AUTOMOBILES—INTERSECTIONS—REQUEST TO CHARGE.
   Request to charge in accident case arising out of collision between plaintiffs' car and defendant's bus at an intersection was properly denied, where request related to driving a car or bus on wrong side of straight road and failed to indicate the accident happened at an intersection.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic § 1092.
[2, 4] 5A Am Jur, Automobiles and Highway Traffic § 1095.
[3, 5] 3 Am Jur, Appeal and Error § 837.
[6] 5A Am Jur, Automobiles and Highway Traffic §§ 712, 1029, 1062.

2. Same—T-Intersection—Instructions—Yielding Right-of-Way.
Instructions given by trial judge in case arising from collision with eastbound car about to continue on through highway which turned north at T-intersection with north and south road upon which defendant's southbound church school bus was to have continued south *held,* to have adequately covered the subject of crossing the center of the road at the intersection, notwithstanding the instructions might have been somewhat more detailed about duty to yield right-of-way at such an intersection, a duty somewhat obviated by undisputed testimony that plaintiffs had slowed down almost to a stop to allow the bus to pass in front of them.

3. Appeal and Error—Requests to Charge—Instructions.
It was not error for trial court to decline to give requests to charge in language proffered, where the subject matter of such requests as deserved to be given were adequately and correctly covered in the court's charge to the jury.

4. Automobiles—Instructions—Intersections.
Instruction given in case arising from collision between plaintiffs' eastbound car on through highway which turned north at T-intersection of road where defendant's southbound church school bus was to continue south across the highway *held,* not to contain the several reversible errors as claimed by plaintiff, when charge is considered as a whole, since it adequately stated the claims and counterclaims of the parties and understandably presented the applicable rules of law and essential legal principles to help guide the jury in reaching an intelligent decision in the case.

5. Appeal and Error—Instructions.
All that either side in a jury case is entitled to by way of instructions is an adequate statement of the various claims and counterclaims of the respective parties and an understandable presentment of the applicable rules of law and essential legal principles to help guide the jury in reaching an intelligent decision in the case, the appraisal by an appellate court of such instructions as are given being made with a realization they are delivered by a busy trial judge in adverse and distracting circumstances.

6. Automobiles — Negligence — Proximate Cause — Contributory Negligence—Questions for Jury.
Claims that jury's verdict was contrary to law and overwhelming weight of the evidence *held,* untenable in case arising out of collision between plaintiffs' eastbound car on through highway

which turned north at T-intersection and defendant's south-bound church school bus which was to have continued south across the through highway, where the evidence made the issues of the negligence of defendant driver, whether such negligence was the sole proximate cause of the accident, and whether plaintiff driver was guilty of contributory negligence, all questions for the jury.

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 6, 1959. (Docket Nos. 12, 13, Calendar Nos. 47,690, 47,691.) Decided February 19, 1959.

Case by Joe Huffman against First Baptist Church of Flushing, an ecclesiastical association, and Robert J. Smith for personal injuries and other damages arising from collision of automobile and church school bus. Similar action by Ann Huffman. Cases consolidated for trial and appeal. Verdicts and judgments for defendants. Plaintiffs appeal. Affirmed.

*Joseph J. Mainolfi (Harold J. Egloff,* of counsel), for plaintiffs.

*Brownell, Gault & Andrews,* for defendants.

VOELKER, J. This is an action for damages resulting from a daylight collision between defendant-appellees' Sunday school bus and plaintiff-appellants' automobile on September 3, 1955, at the intersection of M–38 (a graveled trunk line) and black-topped Van Cleve road in Tuscola county.

The appeal is from the jury verdict of no cause of action, the entry of a judgment thereon, and from orders denying appellants' alternative motions for judgment notwithstanding the verdict and for a new trial. These 2 actions were consolidated for trial as well as appeal, one action being brought by Ann Huffman, who was a passenger in the car driven by

her husband, Joe Huffman, the other by Mr. Huffman.

The intersection at which the accident occurred was not the customary 4-way intersection but rather one shaped in the form of a block letter T turned clockwise to rest on its right side, thus:—⊣ At that point M–38 runs roughly north and south to form the north half of the cross member of the reclining T and at the intersection M–38 turns abruptly to the west to form the trunk or base of the reclining T. In other words there is an abrupt right-angle turn on the main highway. Van Cleve road begins at the turn or curve and runs off due south therefrom on a straight line with the north and south portion of M–38, thus forming the remainder or south half of the cross member of the imaginary reclining T.

Prior to the accident defendant Smith was driving the bus south on M–38 at approximately 30 to 35 miles per hour, intending not to turn west with the trunk line but to proceed in a straight course south into Van Cleve road. Plaintiffs were proceeding east on M–38 intending to follow the main highway by making the required left turn in the road to the north at the T intersection. The record shows that when plaintiff driver Joe Huffman saw the bus he assumed correctly that it was going to proceed straight on so he slowed his car almost to a stop to let it cross in front of him south into Van Cleve road. No stop signs or similar stationary signs or signal devices are involved. Neither driver appears to have made any signals, by hand or otherwise.

At this point the testimony diverges sharply, plaintiffs claiming that the bus suddenly turned to its right into the curve, on the wrong side, and that plaintiff driver accordingly accelerated his car in an attempt to get out of its path, and that defendant Smith then turned the bus back to the left and hit him. Defendant Smith on the other hand claimed

that he did not ever turn but at all times continued in a straight path towards Van Cleve road and that the plaintiff driver suddenly accelerated his car, from a near stop, projecting it into the path of the bus.

Defendant driver described the accident as follows:

"As I was coming down the road, as I stated, all I could see at first was the black-top road heading directly away; then as I was very, very close to the intersection I suddenly saw the car coming out from the westerly direction, M-38, as it curves around there, and I saw the car coming, and it looked as though he was stopped, so I intended, of course, to continue right on down the road. Then he started up and hesitated again, and then pulled right into my path."

From this testimony and other evidence presented, including the physical location of the vehicles after the accident (the car off the road to the east and the bus on the right side of Van Cleve road to the south), we think it was not unreasonable for a jury to conclude that after plaintiff driver slowed his car down ostensibly to allow the bus to pass by, he then decided there was still time to get around the corner in front of it—and, in fact, almost made it.

However this accident may have happened, it is undisputed that in order to reach and proceed south on Van Cleve road the defendant bus driver had perforce to cross the center line of M-38. There was no other way. It was at that point (when defendant driver was crossing the southeasterly lane of M-38) that the left front of the bus collided with the left side of plaintiffs' car. Plaintiffs' action, supported by their proofs, is grounded on the theory that the defendant driver was negligently driving on the wrong side of the road and that any accelerating plaintiff driver did was to avoid an emergent condi-

tion precipitated solely by the negligence of defendant driver.

At the conclusion of proofs, the case with its conflicting and contradictory evidence was submitted to the jury. Plaintiffs' attorney timely submitted a list of requested instructions to the court, and just prior to the giving of the charge he further submitted a supplemental list of instructions. Some of these requested instructions were given in whole, some in part, and others were completely ignored. Plaintiffs now claim that the court erred in failing to give certain of the requested instructions and in giving others that were not requested. The first allegation of error is that the court was wrong in not charging the jury as follows:

"I further charge you, members of the jury, that under the circumstances of this case, one who violates the law of the road by driving an automobile or bus on the wrong side, assumes the risk of such experiment and if injury is caused thereby to another, then the driver driving on the wrong side of the road, having assumed the risk of such experiment, is guilty of negligence and it would make no difference whether he was driving fast or slow. Under the statutes and laws of the State of Michigan, the owner of said bus would also be liable under like conditions as the driver was the employee, servant and agent of the owner. *Marsh* v. *Burnham*, 211 Mich 675."

Had this accident not occurred at an intersection, and had plaintiffs so alleged and testified, they may well have been entitled to some version of the above instruction as requested (*Camden Fire Ins. Co.* v. *Kaminski*, 352 Mich 507). But such is not the pleadings or testimony in this case. The plaintiffs alleged in their declarations that the accident happened "at or in the intersection" and the proofs on both sides substantiated that allegation. Further, the law in-

dicates that the place where this accident happened was legally at an intersection. CLS 1956, § 257.22 (Stat Ann 1952 Rev § 9.1822). That the definition of an intersection given in subdivision (p) of the former section* (substantially the same as at present) included the junction of 2 highways forming a Y, see 1930–1932, OAG, p 273. It follows therefore that the above requested instruction, which pertains to a vehicle traveling on the wrong side of a straight road, with no intersection involved, was not evidentially in point and was thus properly ignored by the trial judge.

The trial judge adequately covered the subject of: crossing the center of the road at this intersection when, among other things, and while quite evidently referring to a drawing, he said:

"Now, this accident is rather a peculiar situation because of the fact that it is an intersection accident. * * * It's not a straight road accident. The road that the bus was traveling extended from the trunk-line highway, as marked. The straight road would be this Van Cleve road. The defendant submitted testimony that he was going straight onto that Van Cleve road. Peculiarly, that other highway turned and according to the map drawn here —as near as you can get at it in viewing it, and I believe the testimony revealed—it turns at almost a right angle and going away from this intersection so that there is an intersection here of the M–38 and the Van Cleve road. Although the Van Cleve road ends at M–38, still it is an intersection, street intersection, a road intersection here, and this is an intersection accident.

"Now, on the intersection, when 2 vehicles enter an intersection at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right except when otherwise indicated in the intersection and so forth. Now,

_____
* CL 1929, § 4693 (Stat Ann § 9.1561).—REPORTER.

that is the only thing that has been shown relative to any State law stating the operator of a motor vehicle on our highways, there has been absolutely no question here of any excessive speed.    *    *    *

"The only question involved here—and the plaintiff seems to rely upon the one question—that the bus went over the center line of the highway. I charge you that the bus, if it was going straight ahead, would have to go over the center line of the highway, as you can readily see, in order to go straight ahead on the road that he was traveling. So, it is not a matter in that question of going over a center line of a highway.    *    *    *

"Even though the operator of the defendant or the plaintiff car was traveling and following M–38 he still was making a left turn at this intersection. He would have to make a left turn at the intersection in order to follow the highway. That is where it's a peculiar situation, because of the layout of the road there, and that will have to be straightened out as best you are able to.

"Now, you are the sole judges of the fact. You are the sole judges of the credibility to be given to the testimony of the witnesses here."

Perhaps the court might have expounded in greater detail on the law of the road pertaining to intersections, particularly in regard to the duty to yield at an intersection, including the type of intersection here involved, the normal duty in this instance falling on the bus driver. In the light of the undisputed evidence, however, we think the instructions given were adequate to the case and indeed were to some extent weighed in plaintiffs' favor. The charge given seemed to place a duty on defendant bus driver to yield the right-of-way to the plaintiffs, who entered or were entering the intersection to his right, regardless of the circumstances. The undisputed fact that plaintiffs slowed down almost to a stop to allow the bus to pass in front of them we think obviated

that duty and the corresponding need for elaborate instruction on the point. To that extent the plaintiffs got a more favorable instruction than they deserved, and may not now be heard to complain.

To further dissect the rather lengthy instructions of the trial judge so as to discuss individually each of the plaintiffs' 10 allegations of error in regard thereto would unduly burden this opinion. Plaintiffs' first 4 allegations of error refer to requested instructions that were allegedly not included in the trial court's charge to the jury. We think it sufficient to observe that in our opinion the subject matter of such of these instructions that deserved to be given were adequately and correctly covered in the court's charge to the jury. That such is sufficient see *Seta* v. *Swain,* 327 Mich 668; and *Anderson* v. *Lynch,* 232 Mich 276. In the absence of some point or principle of general interest to the profession (and we discern none) we do not feel compelled to demonstrate or buttress the above conclusion.

The next 5 allegations of error refer to specific portions of the charge as given which the plaintiffs claim to be erroneous. Again we have carefully read and reread the instructions of the court in the instant case to ascertain if any error was committed that would justify disturbing the verdict rendered. We find none.

The litigation in the instant case involves a relatively simple intersection accident (notwithstanding the fairly unusual nature of the intersection) and presents no complicated legal questions which should in any way confuse or mislead the average person sitting as a juror. We find in the instant case that the charge of the court, when read as a whole, adequately stated the various claims and counterclaims of the respective parties, and understandably presented the applicable rules of law and essential legal principles to help guide the jury in reaching an intel-

ligent decision in the case. That is all either side is ever entitled to. See, generally, *Hautala* v. *Cochran,* 289 Mich 409; *Bathke* v. *City of Traverse City,* 308 Mich 1; *Graham* v. *United Trucking Service, Inc.,* 327 Mich 694.

We are so often compelled to repeat this elementary proposition that we are moved to observe that it is probable that few trial judges, however experienced or learned, if given more time for meditation and research, would again give precisely the same jury instructions that they actually gave. Upon further reflection their instructions would doubtless be less halting and redundant, infinitely clearer and more cogent and more on target—much like the compelling jury arguments most lawyers make to their bedroom ceilings the night after the trial is over. It follows that the job of an appellate court in appraising jury instructions (usually given by the busy trial judge immediately following the tug and heat of the trial) is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely: Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case? In other words, in the idiom of the day, we simply ask ourselves: Were the instructions understandable and did they give both sides a "fair shake"? We must not also demand the subtle reasoning of a Socrates or the gem-like prose of a Walter Pater. Few jury verdicts anywhere would stand if that were the criterion.

Trial judges are constantly required to instruct juries, often in complicated cases, with scarcely more pause to meditate than to sip a glass of water— much (dark thought) as though the members of this

Court were obliged, say, to dictate in final form their opinions from the bench immediately following oral argument. Their task is unenviable and manifestly neither counsel nor we should impose on the instructions thus given any severer requirements than we ourselves would fairly expect under similar circumstances. Given the adverse and distracting conditions under which most jury instructions must be delivered, the marvel is not that the average jury instructions are as bad as they are but rather that they are as good.

Thus modestly tested we must conclude that the present instructions fairly pass muster, at the same time reflecting what a pity it is that most of the jury instructions which do find their way into our form books are not the carefully polished pearls alluded to but usually those impromptu shot-from-the-hip ones frequently so lame and inept and so nearly off target that an appeal was felt necessary to determine the issue. Thus it is that some rather questionable pebbles sometimes falsely appear to emerge from our reports branded as pearls to be envied and emulated. This appearance may be dangerous.

Plaintiffs' 10th and final allegation of error is that the verdict of the jury is contrary to the law and overwhelming weight of the evidence. In this case the plaintiffs assumed the burden of proving first that the defendants were negligent and second that such negligence was the proximate cause of the accident. We do not think it can be said as a matter of law that under the circumstances of this case defendant Smith was negligent in crossing M–38 as he did. Nor that if he was negligent in so doing that such negligence was necessarily the sole proximate cause of the accident in question or that the plaintiff driver was not himself negligent. It seems to us that reasonable men might fairly have arrived at different conclusions in regard to these questions.

Such being the case, those issues were properly submitted to the jury, and its verdict will not be set aside unless it was clearly against the great weight of the evidence. From our study of the briefs and original transcript we cannot fairly say that it was.

Judgment affirmed, with costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.