### KING v. DALY.

1. WITNESSES—CROSS-EXAMINATION—BIAS—DISCRETION OF COURT.
   The scope and duration permitted in the cross-examination of witnesses to show bias or interest rests in the sound discretion of the trial court, and the exercise thereof will not be reversed absent a clear showing of abuse.

2. SAME—CROSS-EXAMINATION.
   Record in actions for personal injuries to plaintiff wife, a pedestrian, *held*, not to reveal that plaintiff was unduly or prejudicially restricted in the cross-examination of a witness for defendant motorist, where it appears he had identified himself as a retired nursery farmer but plaintiff elicited from him that he had retired after over 40 years' service as an attorney for different kinds of insurance companies and cross-examination was not stopped until plaintiff made the argumentative charge that he gave his talents to the defendant.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses § 716.
Cross-examination for purpose of showing bias or hostility, on part of witness. 74 ALR 1157.
[3, 5] 5 Am Jur 2d, Appeal and Error § 894.
[4, 6] 5 Am Jur 2d, Appeal and Error §§ 891–894.
[7, 8] 8 Am Jur 2d, Automobiles and Highway Traffic § 1018 *et seq.*

3. APPEAL AND ERROR—INSTRUCTIONS.

An appellate court views a trial court's instructions as a whole in determining their adequacy.

4. SAME—INSTRUCTIONS—TEST OF ADEQUACY.

The test applied by an appellate court in determining adequacy of instructions in a civil case is whether they inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case.

5. SAME—INSTRUCTIONS—INDIVIDUAL OBJECTIONABLE SENTENCES.

The fact that individual sentences in instructions, when considered independent of the context, are objectionable, does not constitute reversible error, where the charge, taken as a whole, correctly states the law applicable to the particular case.

6. SAME—INSTRUCTIONS—PROLIXITY.

Prolixity in instructions in a case does not necessarily equate with error.

7. AUTOMOBILES—PEDESTRIANS—INSTRUCTIONS—OBJECTIONS.

Instructions given in actions arising from injuries pedestrian woman received when struck by defendant's car at a street intersection in downtown section of a city *held,* to have outlined adequately the relative positions of both plaintiff and defendant, in view of all instructions given on the subjects of negligence, contributory negligence, and proximate cause and in view of failure to object to instructions of which complaint is now made.

8. SAME—PEDESTRIANS—INSTRUCTIONS—NEGLIGENCE—EVIDENCE.

Instructions in actions against motorist for injuries inflicted upon plaintiff wife while crossing a street at an intersection that the "mere fact that an accident has happened" is not evidence of negligence *held,* not prejudicial in view of detailed instructions which followed.

Appeal from Genesee; Baker (John W.), J. Submitted Division 2 November 4, 1965, at Lansing. (Docket Nos. 427, 428.) Decided December 20, 1965. Leave to appeal denied by Supreme Court February 22, 1966. See 377 Mich 702.

Complaint by Irene King against Howard A. Daly for injuries allegedly sustained when struck by an

automobile, driven by defendant, while crossing a street. Derivative action by Harvey King. Verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Cicinelli, Mossner, Majoros & Harrigan* (*Peter F. Cicinelli* and *Eugene D. Mossner,* of counsel), for plaintiffs.

*Milliken & Magee* (*Herbert A. Milliken,* of counsel), for defendant.

FITZGERALD, J. Plaintiff Irene King brings this appeal from a verdict of no cause of action rendered by the jury in a suit to recover for her personal injuries as a result of being struck by defendant's car. Her husband appeals from a similar verdict in his companion suit.

The facts, other than that plaintiff was struck while crossing the street at an intersection in downtown Flint, are not essential to deciding this appeal, since the questions revolve primarily around the conduct of the trial.

Plaintiffs claim they did not receive a fair and impartial trial by jury due to erroneous and repetitious jury instructions and because the trial judge terminated cross-examination of a defense witness.

On the latter count, appellants' contention would infer that the trial judge foreclosed cross-examination of a prime defense witness, Edward L. Young, when the thrust of the matter is that plaintiff did manage to bring out what plaintiff considered to be that witness's bias or prejudice. The witness had identified himself as a retired nursery farmer and when cross-examined by counsel for plaintiff, the colloquy complained of went as follows:

"*Q.* Now, tell me, did you have another profession other than the operation of a farm?

"*A.* Yes. I was admitted to the bar in 1907, practiced law for 31–1/2 years.

"*Q.* And was that a particular type of law that you practiced?

"*A.* It was a specialty, yes.

"*Q.* What kind of a specialty was it?

"*A.* I represented several insurance companies for different kinds of claims; life insurance, casualty insurance, fire insurance.

"*Q.* Was this trial work or office work?

"*A.* It began with mostly with trial work, and continued partially with trial work, but it developed more into managerial duties of a large claim office.

"*Q.* You were salaried, full time employed?

"*A.* I was.

"*Q.* For an automobile and other type of casualty —

"*A.* No casualty claims.

"*Q.* — insurance companies?

"*A.* Liability claims.

"*Q.* You were working as an investigator then, or were you working as an office man?

"*A.* I was working as an attorney.

"*Q.* And, as a matter of fact, your views are — were represented — you gave your talents to the defendant?

"*Mr. Milliken.* If the Court please, I resent that on behalf of this witness, dragged here by a subpoena some several years after he's retired and to have this kind of inference put on the record. I think it should be stricken. The question should be stricken.

"*Mr. Shanahan.* If the Court please, I believe that what I am trying to show is possibly bias or prejudice of 42 years of experience in a particular field, 42 years of working for the defendant to get off liability. And I think this is proper for the jury to weigh. There's no implications that I make —

"*Mr. Milliken.* If the Court please, —

"*Mr. Shanahan.* — except to bring this up to the jury.

"*Mr. Milliken.* If the Court please, again in inference to bring this up to the jury that a man like this who practiced law for 40 some years, who devoted all of his efforts to get out of liability, and then after he's retired is still doing that I resent because as everyone knows the job he was in he was there to pay just claims and resist the others.

"*Mr. Shanahan.* Your Honor, I'm not making any implication.

"*Mr. Milliken.* He certainly is.

"*Mr. Shanahan.* Any implications made has been stated by —

"*Mr. Milliken.* I'd like to know —

"*Mr. Shanahan.* — defense counsel.

"*Mr. Milliken.* I would like to know what else the purpose is.

"*A.* You want me to answer that question?

"*Mr. Milliken.* If the Court please, —

"*Mr. Shanahan.* I don't recall the question.

"*Mr. Milliken.* We have all gone far enough with it.

"*The Court.* I will sustain the objection. Further examination is immaterial."

Thus did the court terminate the cross-examination.

Appellants assert that completely unlimited cross-examination is the right of any litigant and that the court's ruling destroyed the effectiveness of what counsel had uncovered concerning the witness's background. Appellants pick the jury's mind by such contentions as that the court "in reality instructed the jury that it was *to disregard* this man's background in assessing his testimony." They say further that "The jury also may well have believed that the trial court placed its approval or blessing on the testimony of witness Young, since plaintiff's counsel was forbidden by the court from proceeding any further with this line of cross-examination."

To such speculation we cannot subscribe and further, cannot say that the trial judge improperly limited cross-examination. It cannot be said that the alleged biases were not brought before the jury by the previously-quoted portion of the record. The cross-examination was permitted freely and fully so long as it remained within proper bounds and was terminated only when the argumentative charge was made to the witness that, "you gave your talents to the defendant."

The scope and duration permitted in the cross-examination of witnesses to show bias or interest rests in the sound discretion of the trial court, the exercise of which will not be reversed absent a clear showing of abuse. *Merkel* v. *Consumers Power Co.* (1922), 220 Mich 128; *Malicke* v. *Milan* (1948), 320 Mich 65. While the allowance of considerable latitude to the cross-examiner is to be preferred, the record here does not reveal that the plaintiff was unduly or prejudicially restricted. This being true, no abuse of discretion is to be found.

Appellants further contend that there was error in the trial court's charge to the jury, specifically in what they claim is undue emphasis on the subject of contributory negligence and in unduly emphasizing that plaintiffs had the burden of proof and must prove their case by a preponderance of the evidence.

We must first point out that appellant acknowledges that the record does not disclose whether or not any objections were ever taken to the complained-of instructions.

In his opinion denying a motion for a new trial, the trial judge sheds some light on this matter in his statement,

"Trial counsel was well aware of all the instructions which the court would give, but failed to object and on the other hand, seemed well satisfied that the ones given were fair to both sides.

"Counsel has diligently added up the references to instructions which contain the words contributory negligence and preponderance, but has conveniently ignored those instructions which describe in detail the obligations of the defendant driver. It has been repeatedly held by our courts that the instructions should be read as a whole and in view of the type of case involved. This same proposition holds true as to isolating parts of the charge which define words or phrases where clarification is made at a later time."

The rule that appellate courts view a trial court's instructions as a whole in determining their adequacy is a basic concept. *Huffman* v. *First Baptist Church of Flushing* (1959), 355 Mich 437.

A passage from that decision bears repeating. Mr. Justice Voelker, writing for a unanimous court, stated (p 446):

"We are so often compelled to repeat this elementary proposition that we are moved to observe this it is probable that few trial judges, however experienced or learned, if given more time for meditation and research, would again give precisely the same jury instructions that they actually gave. Upon further reflection their instructions would doubtless be less halting and redundant, infinitely clearer and more cogent and more on target—much like the compelling jury arguments most lawyers make to their bedroom ceilings the night after the trial is over. It follows that the job of an appellate court in appraising jury instructions (usually given by the busy trial judge immediately following the tug and heat of the trial) is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely: Did the instructions as given adequately inform the jury on the applicable law reflecting

and reflected by the various evidentiary claims in the particular case? In other words, in the idiom of the day, we simply ask ourselves: Were the instructions understandable and did they give both sides a 'fair shake'?"

This test, which seems to us to be the only reasonable test which can be applied, validates the instructions before us. For every complained-of passage, another portion of the instructions, read with it, clears the point in issue.

In *Wilson* v. *Modern Mobile Homes* (1965), 376 Mich 342, Mr. Chief Justice KAVANAGH states (p 354):

"In *Bouma* v. *Dubois,* 169 Mich 422, 434, quoted with approval in *Gilson* v. *Bronkhorst,* 353 Mich 148, 160, this Court held:

"'"Where the charge of the court, taken as a whole, correctly states the law as applicable to the particular case, and clearly defines the issue, the fact that sentences are objectionable, were considered independent of the context, does not constitute reversible error."'"

The allegations of repetition, while not what any judge would prefer if he had unlimited time to prepare instructions, do not constitute error. Prolixity does not necessarily equate with error.

One final quotation from *Huffman, supra,* will define our view toward instructions such as those before us (p 446):

"Trial judges are constantly required to instruct juries, often in complicated cases, with scarcely more pause to meditate than to sip a glass of water—much (dark thought) as though the members of this Court were obliged, say, to dictate in final form their opinions from the bench immediately following oral argument. Their task is unenviable and manifestly neither counsel nor we should impose on the instructions thus given any severer requirements

than we ourselves would fairly expect under similar circumstances. Given the adverse and distracting conditions under which most jury instructions must be delivered, the marvel is not that the average jury instructions are as bad as they are but rather that they are as good."

The remaining two contentions of error likewise deal with instructions, charging specifically that their content was erroneous.

"1. Did the trial court err in instructing the jury that if plaintiff was guilty of 'any negligence' which contributed to the accident or 'some degree' of negligence that she could not recover damages against defendant?

"2. Did the trial court err in giving an instruction to the effect that the 'mere fact that an accident has happened' is not evidence of negligence?"

In the matter of the first contention, plaintiffs say that the instructions "suggested" that if the plaintiff was negligent in the slightest degree, she could not recover. The cases relied upon by plaintiff condemn the actual use of the term "slight negligence". *Mack* v. *Precast Industries, Inc.* (1963), 369 Mich 439; *Frederick* v. *City of Detroit* (1963), 370 Mich 425.

In *Iwrey* v. *Fowler* (1962), 367 Mich 311, the trial judge instructed the jury that if the plaintiff was 1-10th of 1% guilty of negligence she could not recover. This instruction was held to be erroneous.

In the case before us, the court did not speak in any way of percentages, nor did it refer to the "slightest degree" of negligence. One of the final instructions to the jury before it returned its verdict was as follows:

"Contributory negligence does not mean negligence so slight as to be immaterial or remote lack of care. But it means negligence proximately materially contributing to the accident."

No sooner had this instruction been given than plaintiffs' trial counsel requested a further instruction which was given:

"I might give you this further portion of instructions. Mrs. King as a pedestrian is not required to be free from every manner and degree of fault to allow plaintiff recovery. It is enough for recovery if you find that Mrs. King once in the crosswalk did everything that she could be reasonably expected to do to avoid injury, and the defendant Daly had an opportunity to avoid the accident failed to do so in exercise of that degree of care required and expected of the average driver. In other words, if you find that Mrs. King was negligent this would not preclude a verdict for coplaintiffs if you find that Mr. Daly by using reasonable care and prudence might have avoided the accident notwithstanding Mrs. King's negligence."

A fair reading of the instructions demonstrates their adequacy in outlining the relative positions of both plaintiff and defendant.

A review of the cases cited by plaintiff in support of his second contention satisfies us that an accident, standing alone, gives no right of recovery until all the elements of a cause of action have been proven. If there was any misapprehension in the minds of the jurors stemming from the instruction that the "mere fact that an accident has happened" is not in itself evidence of negligence, it was corrected by the detailed instructions which followed. No prejudicial error is to be found.

On the basis of the errors assigned, we find no ground for reversal of the jury's verdict of no cause of action.

Affirmed. Costs to appellee.

McGREGOR, P. J., and T. G. KAVANAGH, J., concurred.