GARCEAU *v.* ISHPEMING-NEGAUNEE
HOSPITAL ASSOCIATION.

1. TRIAL—INSTRUCTIONS TO JURY—BASIS.
   A jury instruction must be based on evidence introduced during the course of the trial.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS TO JURY
   —EVIDENCE.
   Instruction to jury on contributory negligence was proper in action for negligence where there was evidence in the record from which the jury could find contributory negligence.

3. SAME—INSTRUCTIONS TO JURY—"UNAVOIDABLE ACCIDENT".
   Appearance of phrase "unavoidable accident" in trial judge's instructions in negligence action is not error where instruction was clearly couched in terms of burden of proof of negligence and was accurate and not misleading.

4. SAME—INSTRUCTIONS TO JURY—REPETITION—"NO CAUSE OF AC-
   TION".
   A trial judge's instructions to the jury in a negligence case should be judged in light of the less-than-ideal circumstances under which he must convey a view of applicable law which is fair to both sides; thus the mere repetition of a particular word or phrase such as "no cause of action" a number of times in a set of instructions is not reversible error where a review of entire charge reveals that it was fair and not misleading.

Appeal from Marquette, Baldwin (George S.), J. Submitted Division 3 May 8, 1968, at Marquette. (Docket No. 3,983.)   Decided October 23, 1968.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 573 *et seq.*
[2] 38 Am Jur, Negligence § 367.
[3] 38 Am Jur, Negligence § 6.
[4] 53 Am Jur, Trial § 559.

Complaint by William Garceau against Ishpeming-Negaunee Hospital Association, a Michigan non-profit corporation, for personal injuries sustained in fall on defendant's premises. Plaintiff's employer, Railway Express Agency, Inc., joined as party plaintiff on motion of defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*Quinnell & Quinnell*, for plaintiff Garceau.

*Eldredge & McDonald*, for plaintiff Railway Express Agency, Inc.

*Clancey & Hansen*, for defendant.

J. H. GILLIS, J.   This is a personal injury negligence action. Plaintiff Garceau here appeals from a jury verdict of no cause of action and of denial of his motion for a new trial. Error is alleged to have been committed by the court in its instructions to the jury in 3 particulars, *viz.*:

(1) that the instructions unduly emphasized and repeated the phrase "no cause of action" and that the burden of proof was on the plaintiffs,

(2) that the court erred in instructing the jury that negligence must be proven beyond the fact of the accident itself where it used the term "unavoidable accident,"

(3) that it was error to instruct on contributory negligence.

We deal with these points in reverse order.

The requisite for a jury instruction is that it be based on evidence introduced during the course of the trial. Within the record made of these proceedings there was evidence from which the jury could find contributory negligence and thus the instruction

was properly given. See *Agranowitz* v. *Levine* (1941), 298 Mich 18.

"Unavoidable accident" would not appear to be an automatic curse upon a well prepared and thoughtful set of jury instructions. We do not perceive this to be an "unavoidable accident" charge such as that given in *Elbert* v. *City of Saginaw* (1961), 363 Mich 463. Indeed, the entire instruction in which this term was used was clearly couched in terms of burden of proof of negligence. The instruction was not misleading and certainly none could deny its accuracy. *Daigneau* v. *Young* (1957), 349 Mich 632.

As to the first point above referred to, plaintiff claims that the burden of proof instruction was repeated 10 times as was the use of the phrase "no cause of action." Defendant counters with calling our attention to the fact that the words "negligence," "wrong," "fault," "liable," "find for plaintiff," and "cause of action" appear a total of 58 times in the instructions.

We are unimpressed with numbers where a qualitative review of the entire charge convinces us that the charge was fair and not misleading by virtue of any repetition. Defendant cites to us *Hayes* v. *Coleman* (1953), 338 Mich 371, which we find to be of controlling persuasiveness on this point. Moreover, we are indebted to defense counsel for calling our attention to the choice and well-taken quotation of Mr. Justice VOELKER writing for the Court in *Huffman* v. *First Baptist Church of Flushing* (1959), 355 Mich 437, 446, 447:

"We are so often compelled to repeat this elementary proposition that we are moved to observe that it is probable that few trial judges, however experienced or learned, if given more time for meditation and research, would again give precisely the same jury instructions that they actually gave. Upon further reflection their instructions would

doubtless be less halting and redundant, infinitely clearer and more cogent and more on target—much like the compelling jury arguments most lawyers make to their bedroom ceilings the night after the trial is over.  It follows that the job of an appellate court in appraising jury instructions (usually given by the busy trial judge immediately following the tug and heat of the trial) is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely:  Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case?  In other words, in the idiom of the day, we simply ask ourselves:  Were the instructions understandable and did they give both sides a 'fair shake'?  We must not also demand the subtle reasoning of a Socrates or the gem-like prose of a Walter Pater.  Few jury verdicts anywhere would stand if they were the criterion.

"Trial judges are constantly required to instruct juries, often in complicated cases, with scarcely more pause to meditate than to sip a glass of water—much (dark thought) as though the members of this Court were obliged, say, to dictate in final form their opinions from the bench immediately following oral argument.  Their task is unenviable and manifestly neither counsel nor we should impose on the instructions thus given any severer requirements than we ourselves would fairly expect under similar circumstances.  Given the adverse and distracting conditions under which most jury instructions must be delivered, the marvel is not that the average jury instructions are as bad as they are but rather that they are as good."  .

Affirmed.  Costs to appellee.

Fitzgerald, P. J., and McGregor, J., concurred.